## FRANCHISE FOR CONSTRUCTION OF LEASE OF WATERWORKS SYSTEM.

Common Pleas Court of Ottawa County.

JOHN MOORE· v. VILLAGE OF ELMORE.

Decided, February 26, 1910.

*Municipal Corporations—Grant to Erect a Water Works System—Bonds Can Not be Sold to Pay Rental Under Lease, When—Statutory Provision for Lease is an Express Grant of Power—Franchise May be Granted to an Individual—Franchise with Lease and Option Privileges Not Invalid as Containing More than One Subject—Failure to Perform Contract Conditions Waived by Counsel Can ·Not ·be Enjoined—Sections 3809 and 3939.*

1. The statutory provision for the selling of bonds by a municipality "for erecting or purchasing water works and supplying water to the corporation" is to be. read literally, and can not be construed to authorize a sale of bonds to pay rental under a lease of waterworks not yet constructed.
2. The provision of Section 3809 that "any village  *  *  * may contract  *  *  * for the leasing of the water works. plant," is an express grant of power to lease such plant.
3. An ordinance for a franchise to construct a water works system in a village may be granted to an individual as well as a corporation.
4. A village prevented by inability so to do, from voting sufficient bonds to construct a water works system may grant a franchise to an individual to construct such a system, and at substantially the same time lease the system for a period of ten years as provided by Section 3809.

5. A franchise for the construction, maintenance and operation of a system of water works, and providing that the village may lease the same and also for an option thereon at the expiration of the period, is not objectionable on the ground of unfitness or uncertainty, and as containing more than one subject, the lease and option features being conditions of the franchise and not subjects of limitation.

6. Failure by a contractor to comply with the conditions of a contract entered into by him with a village, which 'conditions were waived by council, is not in the absence of fraud or misconduct on their part a cause for injunction against performance of the contract, especially where such failure does not result in prejudice to the community.

*A. F. Allyn* and *G. W. Keightley,* for plaintiff.
*Scott Stahl,* contra.

REED, J.

Prior to October 19, 1909, the village of Elmore attempted to vote bonds for the purpose of building a waterworks system. The plaintiff in this action commenced an injunction proceeding in this court to enjoin the issuing of the bonds, and upon the petition a temporary restraining order was granted. That case is still pending and undisposed of. In October, 1909, the village of Elmore passed an ordinance granting to J. F. Cole, his successors and assigns, the right to construct, maintain and operate a system of waterworks in the village of Elmore. On November 15, 1909, the village of Elmore passed an ordinance to provide for the execution of a lease of a system of waterworks; the ordinance provided for the leasing of the waterworks which Cole is to construct under the franchise ordinance theretofore passed. This last named ordinance fixes the terms and conditions of the lease, and provides the amount to be paid each year for the use of the waterworks system. On the same day, to-wit, November 15, 1909, the village of Elmore passed an ordinance to issue bonds in the sum of $2,500 for the purpose of supplying the village of Elmore and the inhabitants thereof with water. These bonds were about to be issued and were advertised for sale when the plaintiff filed this action to enjoin the village from carrying out the provisions and conditions of the lease ordinance, or

from issuing, selling or disposing of the bonds about to be issued in pursuance of the ordinance of November 15, 1909.

A temporary injunction was issued in this case, and the matter comes up now for hearing upon the application of the defendants to dissolve this injunction.

The plaintiff claims, in the first instance, that the whole proceeding on the part of the defendants is in the nature of a scheme to foist upon the citizens of the village of Elmore a waterworks system without giving them an opportunity to express their desire at an election; that the defendants are acting in fraud of the rights of the citizens of the village of Elmore, and the court ought to interfere to prevent it. Upon the hearing and in the arguments nothing was said about this claim in the petition, and it being well settled as a rule of law that presumptions are all in favor of the good faith of public officials who act, there is nothing in the case from which the court would be justified in drawing the conclusion that there was any fraud in this transaction. On the contrary, I am of the opinion that the public officials in whatever they have done in this matter have acted in the utmost good faith, believeing at least they were acting in the interest of the whole people of the community. This seems to me to be a conclusive answer to this contention.

It is claimed on behalf of the plaintiff that the franchise ordinance granting to Cole the right to erect a waterworks system in the village of Elmore and maintain the same is void because there is no authority in law for granting such a right or privilege to an individual; that under the law of Ohio such a franchise or privilege can only be granted to a company or corporation. And in support of this contention it is claimed that the village has no authority except that which is directly given to it by law, and such additional authority as is necessary to carry into effect the express authority granted. This contention of the plaintiff is not tenable because it is not a question of the authority of the village to do a thing; it is rather the construction to be put upon the statute. And construing the statutes so as to give effect to the intention of the Legislature in permitting villages of this character to grant such privileges,

it seems to me that the language is broad enough to authorize the granting of such a franchise as was granted by the village of Elmore to an individual; and, having reached that conclusion, it seems to me clear that the franchise can not be declared void on this account. In other words, it being the intention of the Legislature to permit villages to grant these franchises or privileges, there can be no reason why it could not grant such a privilege to an individual as well as to a company or corporation. And, having reached the conclusion it was the intention of the Legislature to so provide, the court will read into the statute the word "individual" and thus give effect to the intention of the Legislature.

It appears from the pleadings and the testimony upon the hearing that the waterworks provided for in the franchise granted to Cole has not as yet been constructed, and, as has been said, the whole thing is on paper. And the plaintiff asserts that the lease ordinance is void because the authority, if there is any authority, to make a lease of a waterworks plant, presupposes the existence of such a plant, and there must be in existence a waterworks plant before the village is authorized to enact an ordinance leasing the same; and some authorities have been cited in support of this claim. I do not know of any reason in law, or in good morals, that would prevent the village from entering into such an arrangement as has been made in this case. If the village is prevented by reason of its inability to vote sufficient bonds to construct a waterworks system, why may it not agree with Cole in advance that if he will construct a waterworks system the village will lease the same for a period of ten years? These laws are enacted for the protection of the taxpayers, and to prevent fraud, and I can not see wherein the rights of the public will be greatly prejudiced, or prejudiced at all, by permitting such arrangement as has been made in this case. It is quite fair to presume that the citizens of the village of Elmore are desirous of having a waterworks system if the same can be procured according to law. In fact, a waterworks system is almost indispensable to any community the size of the village of Elmore. The citizens speak through the officers of a

village, and the council have taken action in the matter, and the court is bound to assume that its action represents the will of the people.   And I am inclined to the opinion that there is nothing in the claim that would prevent the village from entering into an arrangement like the one at bar; that is, from granting a franchise and at substantially the same time entering into a lease ordinance.

The plaintiff further asserts that the franchise ordinance is void because it is indefinite and uncertain, and contains more than one subject which is not expressly stated in the title.   I have examined the authorities submitted in support of this contention, and am of the opinion that the claim is not well founded.   The franchise ordinance authorizes the construction, maintenance and operation of a system of waterworks, and it provides that the village may lease the same, and also for an option at the expiration of a period of years.   If the claim of the plaintiff is well taken, then a city or village could never protect itself by providing for a lease, or providing for an option, because if it gave a straight franchise without these provisions it would have to depend upon the will of the party to whom the franchise was granted, or its successors and assigns, whether an option should be granted or a lease ordinance entered into. These things are not new subjects.   They are conditions of the franchise, and not new subjects of legislation.   In other words, the franchise is a franchise to Cole permitting him to construct and maintain a system of waterworks in the village of Elmore, and lay mains in the streets, etc., conditionally.   I know of no rule of law or decisions that would prevent the council of the village from asserting its rights in case it should in the future desire to take over the property, either by lease or by purchase.

It is also set forth that J. F. Cole has in numerous ways failed to comply with the conditions of the ordinance on his part to be performed.   These are matters in my opinion that may be properly waived by the village council; and in the absence of fraud or misconduct on the part of the public officials, a court of equity will not enjoin the carrying out of a contract such as the one under consideration.   Before a court of equity

will interfere with the acts of the officers of a municipality, such as the village of Elmore, it must appear clearly and convincingly that it is necessary for the court to do so to protect the community from a manifest injury; and where it appears that the council are exercising an honest judgment and acting in good faith, even though it may be waiving some rights which it may enforce, if it desires to do so, a court of equity will not enjoin, especially in the absence of evidence that such act will result prejudicially to the community. The things of which the plaintiff complains as not having been complied with by Cole are unimportant matters that the village may at any time exact and fully protect its rights.

Section 1536-205, R. S. (General Code, 3809) further claimed that the village had no authority to lease a waterworks system.

"That the council of any village may make a contract with any person, firm or company, for the leasing of the waterworks plant of any person, firm or company therein situated for a period not exceeding ten years," does not directly authorize such lease to be made, but is intended merely to provide that in case such lease is made, the certificate that the money is in the treasury does not need to be on file; that this statute should be read altogether, and is intended merely as a restriction upon the right of a municipal corporation to contract obligations, and that this language is merely an exception and not an express grant of power. If this is not an express grant of power to lease a waterworks system, there is none to be found in the statute. The language is plain and unambiguous. It authorizes cities or villages to lease waterworks systems. It can not be said that it creates an obligation to be paid by the taxpayers because it may be presumed that careful and conservative management will make it more than self-sustaining. Who can say at this time that if this waterworks system is built and the village takes it over and manages it properly, it will not be self-sustaining? And it may produce a source of income to the village beyond any obligation that the village by and through this lease ordinance assumes or undertakes to pay. This is an answer to the claim that before this sort of an arrangement can be made

it must be submitted to a vote of the people. This does not conflict with Section 3981, General Code, which provides that the city council may contract for a water supply, but that before entering into such contract the proposition must be submitted to a vote of the inhabitants, because in such a case there is an obligation to be made. There is no limit during which such contract shall exist, and the Legislature has seen fit to make this distinction, that where the municipality leases the waterworks system and undertakes to operate it, it may do so for ten years without submitting it to a vote of the inhabitants of the municipality; but if the municipality undertakes to contract for water for a period of time, it must submit it to a vote. It may be urged that there is no reason for the distinction. The court has nothing to do with this. It is sufficient to say that the Legislature has made the distinction, and therefore the court must be guided by the law as it finds it and not be influenced by the fact that the Legislature may have protected the public in one regard and failed to provide the same safeguards for the public if the same thing is done in some other way. It may be said, and undoubtedly is true, that the Legislature considered that if the municipality had the charge and control of the system of waterworks, received the rents, profits and income therefrom, it could protect itself. And again, it may be said that the Legislature intends to encourage as much as possible any municipality in owning and operating its public utilities. And while this limit in time is the nature of public ownership for a period of time, whether it be true or false, it is generally supposed that a municipality can furnish to its inhabitants light, heat and water at a less expense and render better service than can a private corporation that may under our present law over-capitalize and over-bond its property, and thus create a condition that necessitates exorbitant charges to meet fixed demands. I have briefly stated my reasons for the conclusion which I have reached as to the franchise ordinance and the lease ordinance, and this brings me to the question of the bond issue. The only authority that the village has to issue bonds is that granted by the Legislature. The defendant contends it is authorized under paragraph

11 of Section 2835 (General Code, 3939), to issue these bonds. This paragraph reads as follows:

"For erecting or purchasing waterworks and supplying water to the township, or corporation, and the inhabitants thereof."

The defendant contends it has a right to issue bonds under this subdivision if the statute for the erection or purchase of waterworks, or for supplying water to the inhabitants of the community; that the word "and" should be taken out of the statute and in its place the word "or" should be inserted. That is, that the court should read the word "or" in the statute in the place of "and." In a matter of so much importance as the issuing of bonds which become a charge against the community, the law must be strictly construed, and the power of the municipality must be limited absolutely to that granted to it by the Legislature. This statute should be read literally. The court can not read anything into it or change its plain meaning. Giving it that construction which the court is required to give it, the only authority the village has to issue bonds is for the erection or purchase of waterworks for the purpose of supplying the inhabitants with water. The bonds in question are not being issued for the purpose of erecting or purchasing a system of waterworks. On the contrary the purpose is to use the money to pay a rental under a lease. Therefore, the village not being authorized to issue these bonds, its act is void.

I might add, however, in this connection that even if this statute could be construed so as to permit these bonds to be issued under proper conditions, I doubt very much the advisability of this bond issue at this time. Mr. Cole has not yet complied with his contract. There is no system of waterworks in existence in the village of Elmore, and it will be time enough to incur obligations when there is a necessity for it. It is not my purpose to advise the village council of Elmore as to the manner in which it should conduct its affairs, but it might not be out of place at this time to suggest that good faith would require some action on the part of Mr. Cole indicating an intention to carry out his part of the contract before the tax-payers of the village of Elmore are burdened with a bond issue.

A decree will, therefore, be entered in favor of the plaintiff to the extent that the defendant will be enjoined from issuing or selling the bonds. In all other respects the decree will be in favor of the defendant and the defendant will be taxed with the costs. Exceptions may be noted, and bond fixed at $100.

I neglected to speak of the effect of the previous bond issue and the pending injunction suit. It seems to me the village can abandon that proceeding at any time and by granting a franchise to Mr. Cole and enacting the lease ordinance, I am of the opinion it has in effect done so.